UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA ISAACS, on her own
behalf and on behalf of those similarly
situated,

         CASE NO.:   8:14-cv-1716-JSM-JSS

    Plaintiff,

vs.

ONE TOUCH DIRECT, LLC, a Florida
Limited Liability Company,

    Defendant.
_____/

**JOINT MOTION FOR IN CAMERA APPROVAL OF CONFIDENTIAL STIPULATION OF SETTLEMENT AND RELEASE**

Plaintiff, Angela Isaacs (the "Named Plaintiff"), individually and on behalf of those individuals who have opted-in or will opt-in to this case ("Opt-in Plaintiffs"), (collectively with Named Plaintiff and Opt-in Plaintiffs, the "Plaintiffs") and OneTouch Direct, LLC ("Defendant") (together with Plaintiffs, the "Parties"), in connection with the Parties' settlement in this case, hereby jointly request that this Court approve the Parties' settlement. In support thereof, the Parties state as follows:

1. After exchanging voluminous documents and data, and engaging in a full-day mediation lasting over ten hours, the Parties reached a full and final settlement on June 25, 2015, and thereafter prepared and executed a Confidential Stipulation of Settlement and Release (the "Agreement"). Because Plaintiffs' claims arise under the Fair Labor Standards Act ("FLSA") and due to the confidential nature of the Agreement, the Parties are submitting the Agreement to the Court for approval and seek to do so on an *in camera* basis.

2. In accordance with Eleventh Circuit precedent, judicial review and approval of an FLSA settlement provides final and binding effect. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350 (11th Cir. 1982). As the Eleventh Circuit held in *Lynn's Food*:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them . . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id.* at 1352-53.

3. Pursuant to *Lynn's Food*, the Court's review of the overall settlement is to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. In determining whether the settlement is fair and reasonable, the Court may consider the following factors:

> (1) the existence of fraud or collusion behind the settlement;
> (2) the complexity, expense, and likely duration of the litigation;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the probability of plaintiff's success on the merits;
> (5) the range of possible recovery; and,
> (6) the opinions of the counsel.

*See, e.g., Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 U.S. Dist. LEXIS 10287 at *2-3 (M.D. Fla. Jan. 8, 2007). There is a strong presumption in favor of finding a settlement

fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3.

4. By way of background, on July 15, 2014, Named Plaintiff filed the instant lawsuit seeking recovery for unpaid overtime on extra pay (e.g., commissions), unpaid break time, and hours allegedly worked prior to clocking into the timekeeping system and prior to the start of her shift. On this latter claim, she also sought straight time pay for alleged pre-shift work in non-overtime weeks on an unjust enrichment theory. (Dkt. 1). On October 13, 2014, Named Plaintiff filed an Amended Complaint that added an unjust enrichment claim for unpaid break periods of more than five minutes and less than twenty minutes, as well as a claim for a judgment against One Touch as to liability. (Dkt. 28). Defendant disputed the allegations.

5. On October 3, 2014, Plaintiff moved for conditional certification of the class based only on the FLSA claims, and not the state law claims. (Dkt. 21). The Court granted that motion on January 20, 2015. (Dkt. 66).

6. In the course of this matter, there were six Opt-In Plaintiffs and one remains. Defendant and most of the Opt-Ins resolved their claims either through Offers of Judgment or settlement. Before doing so, Defendant produced a multitude of records to the Named Plaintiff that related to her employment and that of all the Opt-Ins. These included but were not limited to payroll data, timekeeping records, daily break time records, call center dialer records, personnel records, etc. In addition, prior to mediation of this matter, Defendant provided electronic data on the entire class of full-time TSRs, representing over seventy thousand rows of information that captured payroll data, timekeeping records, daily break time records, and call center dialer records. The data also presented calculations for computing overtime payments on extra pay (e.g., commissions) in accordance with Department of Labor regulations, and additional calculations addressing hypothetical and actual break time figures for each Class

3

Member.  Counsel for Plaintiffs ("Class Counsel") thoroughly reviewed the data, posing a series of questions to Defendant to ensure a complete understanding of the data and calculations set forth therein.  The compilation of the data, managed and reviewed by an outside vendor, and the exchange of information lasted several months, with numerous checks and balances by the outside vendor and counsel to ensure the integrity and accuracy of the data.  Accordingly, the Parties engaged in extensive informal discovery regarding the merits of Plaintiffs' claims and the calculation of potential but disputed damages for each of the Class Members.

7. After a ten-plus hour mediation before an experienced labor and employment mediator who also represents both plaintiffs and defendants in employment litigation matters, the Named Plaintiff and Defendant agreed upon figures that will fully compensate Class Members for 100% of any alleged overtime premium payment still allegedly owed on extra pay, such as commissions and incentive pay, and will provide fifty percent of the maximum liquidated damages for which each Plaintiff could have sought recovery under a two-year statute of limitations.  Under the FLSA, Plaintiffs could be entitled to liquidated damages on any unpaid overtime.  Because there are disputed issues over whether some Plaintiffs even qualify for overtime pay based on the FLSA's retail sales exemption that Courts have applied to call center environments, and due to Defendant's good faith reliance on its third party payroll company in processing payroll, as well as Defendant's payment of significant amounts of overtime to many of the class members over the course of their employment, making it plausible that the failure to include the commissions in the regular rate was an accounting error, rather than a deliberate scheme, the amount of liquidated damages is half the amount of alleged back wages owed.

8. The Named Plaintiff and Defendant also agreed upon compromised figures that will compensate Class Members for part of the alleged unpaid break time.  This claim was even

4

more hotly disputed based on Defendant's good faith reliance on Section 31a01(c) of the Department of Labor's Field Operations Handbook permitting unpaid breaks for unauthorized extensions of break time.  OneTouch paid employees for five minutes of his/her rest break and provided that unauthorized extensions would not be paid.  The Named Plaintiff and Defendant disputed OneTouch's enforcement of the unauthorized extensions and whether they would need to be paid.  Given the practically insurmountable difficulty of assessing each Class Member's amount of break time[1] and use of that break time, the Named Plaintiff and Defendant reached agreement on a formula whereby Opt-In Plaintiffs will be paid forty percent of the greater of all unpaid rest breaks they took in a day or fifteen minutes (which is on top of the five minutes they were already paid) under a two-year statutes of limitations.[2]

9. Lastly, the Named Plaintiff and Defendant reached agreement that based on the informal exchange of discovery there was insufficient evidence on the claim that Defendant required Named Plaintiff and others to arrive to work ten to fifteen minutes before their shifts began for pre-shift meetings, without paying them for alleged pre-shift work, and that the allegation that this time was unpaid may have arisen from a good-faith misunderstanding between the parties as to when employees were "on-the-clock" after arriving to work.  As explained above, Defendant provided all the time-keeping records on the Named Plaintiff and all Opt-Ins to date, and these records reflected that the employees regularly clocked in before their

---

[1] While records provide an overall total of "break time" per day, they do not provide individual break times to assess how long a particular break lasted.  Each Class Member's timekeeping and dialer records would have to be reviewed and even then an estimate would have to be made of how long what appear to be consecutive breaks in the dialer data may have lasted such that even under Plaintiffs' position they would not need to be paid.

[2] The Named Plaintiff and Defendant agreed to utilize a two-year limitations period based on the informal discovery exchanged to date.  This includes, but is not limited to, OneTouch's published policies strongly prohibiting off-the-clock work, OneTouch's reliance on a DOL Field Operations Handbook provision permitting unpaid break time for unauthorized extensions of paid breaks, as well as for the same reasons the Named Plaintiff and Defendant agreed to limit liquidated damages on the overtime claim on extra pay.

shifts started. Employees were also instructed to use, and appear to have used, a paid pause code for shift meetings.

10. The Parties jointly agree that the terms of their settlement are appropriate in light of all of the facts and legal standards applicable in this case, and that both the cost of protracted litigation and the risk of each side winning or losing were taken into account in the Parties agreeing upon the resolution memorialized in their Settlement Agreement.

11. The Parties further believe there has been sufficient investigation and exchange of information to allow counsel for Plaintiffs and Defendant to evaluate the Parties' claims and defenses and make recommendations to reach a fair and reasonable compromise resolution of this matter.

12. Additionally, there has been no collusion, fraud, or any other inappropriate conduct by either Named Plaintiff or Defendant with respect to the settlement ultimately agreed upon. Courts have found no fraud or collusion where both parties were represented by counsel and the amount to be paid to the plaintiff seemed fair. *See Helms v. Central Fla. Reg. Hosp.*, No. 6:05-cv-383-Orl-22JGG, 2006 U.S. Dist. LEXIS 92994 at *11-12 (M.D. Fla. Dec. 21, 2006). Here, each party was independently represented by counsel with experience in litigating claims under the FLSA, and each counsel was obligated to and did vigorously represent their clients' rights. Based on the amounts to be paid to Opt-in Plaintiffs, as well as the separate amounts to be paid to Class counsel, the Parties believe it is transparent that there was no fraud or collusion.

13. The probability of success on the merits and length of future litigation also militate in favor of this settlement. If the Parties continue to litigate this matter, they will be forced to engage in costly litigation in order to prove their claims and defenses. This settlement, therefore, is a reasonable means for both parties to minimize future risks and litigation costs.

14. At all times material hereto, the Parties have been represented by counsel experienced in the litigation of FLSA claims and the settlement amount and the final Agreement were the subject of arms-length negotiations. The Parties therefore respectfully submit that the settlement they have entered into is consistent with the intent and purpose of the FLSA and the requirements of *Lynn's Food*, as all of the relevant criteria support approval of the ultimate settlement in this matter.

15. Further, the attorneys' fees and costs agreed upon to be paid by Defendant under the settlement were never (and are not) a percentage of any total recovery in this case such that there is no correlation between the amount of monetary consideration being paid to Opt-in Plaintiffs and the amount of attorneys' fees and costs being paid by Defendant on Opt-in Plaintiffs' behalf. *See* 29 U.S.C. §216(b); *Kreager v. Solomon & Flanagan, P. A.*, 775 F. 2d 1541, 1542 (11th Cir. 1985). Rather, Class Counsel's attorneys' fees and costs in this case were negotiated separately and apart from the amounts to be paid to Opt-in Plaintiffs. As the Middle District of Florida explained in *Bonetti v. Embarq Management Co.*, 2009 U.S. Dist. LEXIS 68075 at *11-12 (M.D. Fla. Aug. 4, 2009), where a "plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel. " 2009 U.S. Dist. LEXIS 68075 at *15-16. As noted, the attorneys' fees are not tied to the Opt-in Plaintiffs' settlement.

16. The Named Plaintiff and Defendant also negotiated separately the Claims Administrator Fees and a Service Award to the sole Named Plaintiff. As to the former,

Defendant will pay up to a certain maximum amount, which is set out in the Agreement; thereafter, Class Counsel will be responsible for any excess fees. As to the reasonableness of the Service Award, the Named Plaintiff brought the instant lawsuit, answered Court Interrogatories, actively participated at the mediation, and through that role has secured this settlement. That figure is also identified in the Agreement.

17. During settlement negotiations, the Parties also agreed to include a confidentiality provision in the Agreement. This provision is a material term of the Agreement and is a key part of the benefit of the bargain for Defendant. Therefore, the Parties request that the Court review the Agreement *in camera,* and are submitting their Agreement to the Court under separate cover. *See e.g., Bond v. Florida Fast Foods of* Ocala, Case No. 5:14-cv-392-Oc-30PRL (M.D. Fla., D.E. 18, February 25, 2015) (Moody, J.) (approving motion for *in camera* review of FLSA settlement); *Whitaker v. KableLink Communication*, Case No. 8:13-cv-2093-T-30MAP (Moody, J.) (M.D. Fla., D.E. 57, April 29, 2014) (approving FLSA settlement agreement submitted for *in camera* review); *Sarazen v. Burger King Corporation,* Case No. 8:12-cv-01875 (M.D. Fla., D.E. 18, Feb. 4, 2013) (Moody, J.) (approving FLSA settlement agreement submitted for *in camera* review); *Guenther v. Funlan Theatres & Swap Shop, Inc.,* Case No. 8:13-cv-02871-JSM-EAJ (M.D. Fla., D.E. 16, Apr. 17, 2014) (Moody, J.) (approving motion for *in camera* review of FLSA settlement agreement);

The Parties further request that this Court retain jurisdiction over this case through the Consent Period outlined in the Agreement. Based upon the foregoing, the Parties jointly believe the settlement terms are fair, reasonable and adequate.

WHEREFORE, the Parties respectfully request that the Court conduct an *in camera* review of the Confidential Stipulation of Settlement and Release and approve this Joint Motion for Approval of said Agreement.

Respectfully submitted this 4th day of September 2015.

| | |
|---|---|
| /s/ **Angeli Murthy** | /s/ **Christine E. Howard** |
| Angeli Murthy, Esquire | Christine E. Howard, Esquire |
| Florida Bar No.: 088758 | Florida Bar No.: 872229 |
| Morgan & Morgan, P.A. | FISHER & PHILLIPS LLP |
| 600 N. Pine Island Road | 101 East Kennedy Blvd. |
| Suite 400 | Suite 2350 |
| Plantation, Florida 33324 | Tampa, FL 33602 |
| Telephone: (954) 318-0268 | Telephone: (813) 769-7500 |
| Facsimile: (954) 327-3016 | Facsimile: (813) 769-7501 |
| Email: amurthy@forthepeople.com | Email: choward@laworlawyers.com |
| *Trial Attorneys for Plaintiff* | *Trial Attorneys for Defendant* |